12687

WALKER v. OSWALD *ET AL.*

(148 S. E., 722)

154

*Messrs. C. Birnie Johnson,* and *Henderson & Salley;* for appellants,

*Messrs. R. P. Searson,* and *James M. Patterson,* for respondents,

June 27, 1929.

The opinion of the Court was delivered by Mr. Acting Justice C. T. Graydon.

This was an action to foreclose a mortgage held by the plaintiff, J. J. Walker, covering certain property, which is the subject of this litigation. A brief statement of the facts is necessary to understand the issues involved. J. H. Oswald owned 512 acres in Allendale County. He sold the timber on 360 acres of the 512 acres to one Silverthorn in 1918, which timber lease or contract expired in 1923 with the timber uncut. On March 21, 1920, J. H. Oswald mortgaged the whole tract to the executors of P. J. Drew for the sum of $8,000, and this mortgage was duly recorded on March 21, 1920. J. H. Oswald, on November 24, 1920, executed a timber deed in favor of J. J. Walker, the plaintiff herein, conveying the timber on 360 acres of the 512-acre tract subject to a limitation of 10 years. A portion of the timber, to wit, the poplar, has been cut by J. J. Walker. On October 28, 1925, the executors of Drew, for valuable consideration, transferred the mortgage to Walker, the plaintiff herein; the assignment,

however, was not recorded until November 12, 1925. This is the date on which, admittedly, Walker began his foreclosure of the mortgage covering the property. In the meantime, J. H. Oswald had died and his heirs were substituted as parties defendant along with his administratrix. The *lis pendens* was duly filed, and the action proceeded to judgment; the order of sale being granted on September 22, 1926.

This order of sale was the usual decree in foreclosure carrying with it all of the property covered by the mortgage which admittedly included the 360 acres on which the timber in question was situate.

Three days before the sale date, Walker executed to his brother-in-law, Warren, for an alleged consideration of $2,000, a timber deed covering the timber rights on the 360 acres of land, being the same rights secured by Walker from J. H. Oswald. This timber deed of Walker to Warren was duly recorded, and a notation of the fact that it had been made was entered upon the entry of judgment in this action, and a paper purporting to be a formal release of the timber from said judgment was executed and recorded. No supplemental order or decree was taken, and the action proceeded to the sale, which was had during the legal hours on salesday in November, 1925, by the Master for Allendale County. At the sale Warren requested the Master to read a notice to prospective purchasers, which notice set forth the fact that Warren was claiming the timber on 360 acres of the land under and by virtue of the terms of the deed from Walker to Warren. This notice was signed by Warren and was dated November 1, 1926. At the sale by the Master, *J. L.* Oswald, a relative of the deceased, *J. H.* Oswald, but not an heir at law, purchased the 512 acres at and for a price of $8,000. There were many conflicting statements about the value of the land and the timber. When Walker desired to have a Receiver appointed, he swore under oath that the property did not exceed in value $2,500. When *J. L.* Oswald and the heirs of *J. H.* Oswald, in a cross-bill, sued Walker for al-

leged chilling of the bid, Walker swore that the entire property was worth $8,000, the amount bid by *J. L.* Oswald, and now at the conclusion of the matter Walker contends that the property is worth around $15,000. We do not think, however, that the question of the value of the land is material to the issues here involved. After the purchase of the land by *J. L.* Oswald he, by petition, brought in the defendant Warren as a party in order to determine the rights of the various parties in the transaction, and prayed that the timber deed between Walker and Warren be declared null and void, and that he be declared to have a good fee-simple title to the land in question upon payment of the bid made at the legal sale. The heirs of *J. H.* Oswald join in the cross-bill of *J. L.* Oswald, and, further, ask that judgment be given against Walker and Warren in favor of the heirs of *J. H.* Oswald on the theory that the action of Warren and Walker was in effect a conspiracy to chill the bid, to their injury and damage, on the property in question. The real issues involved in this matter grow out of the original suit as well as the cross-bills and the answer to the cross-bill in the supplemental proceedings. Special Judge Carroll C. Simms heard the matter and rendered a decree holding that the Master's deed passed the title to *J. L.* Oswald, and, further, setting aside the timber deed between Walker and Warren. He seems to have ignored the issue as to the alleged chilling of the bid, and, therefore, this question is not before this Court.

The appellants have excepted to the entire decree of Judge Simms on many grounds, but the questions involved are not so numerous.

The appellant complains of error on the part of the Circuit Judge in holding, according to appellant's contention, that there had been a merger of the two estates, to wit, the mortgage and the timber deed. The appellant Walker expressly affirmed his intention of merging these two estates by his denial of the cross-bill of Oswald, but the question

of merger is not involved in the case under the view taken by this Court. There is no doubt that, where two estates meet, one superior and the other inferior, that the inferior estate merges into the superior estate, provided the party does not express an intention to the contrary. This doctrine, however, has no application to the case at bar for the reason that, if the appellant, Walker, desired to set up his rights under the timber deed in the action of foreclosure, he had a perfect right to do so, but for some unaccountable reason he did not do so. He could have preserved his rights to the timber by setting up the facts in connection with the timber contract in his complaint or by filing an answer in the cause setting forth his rights therein. He could have had a decree of sale made selling the property without the timber, and, if the amount brought by such sale was sufficient to pay the mortgage debt, then the timber could have been reserved to him. If the amount was insufficient to pay the mortgage debt, the timber could have been sold, the mortgage debt paid, and the remainder applied to retire the claim of Walker. Walker did not elect to do this, but desired to sell the property on sales day, secure the legal title in himself, and get control of the entire property. When it dawned upon him that others might bid, he then attempted, a short time before the sale, to sell the timber rights which he claimed were worth $8,000 to his brother-in-law for an alleged consideration of $2,000. Even at this time he could have protected himself by timely application to a Circuit Judge for an order to stop the sale and allow an amendment to the decree.

The appellant contends that, even regardless of this, an equity should arise in favor of Walker under the circumstances to still force the exhaustion of the land estate before the timber be included in the sale to satisfy the mortgage. It cannot be denied that, if this position had been taken and properly presented before the decree of foreclosure, the decree could have been so prepared, but there was

nothing in the decree, the pleadings, or the proof which warranted the Judge in making such finding. There is no necessity to discuss in detail the numerous exceptions by appellant which charge error in practically every finding of the Circuit Judge. The findings of the Circuit Judge were well sustained in fact and will not be set aside unless against the weight of the testimony, or unless there is a manifest error of law.

The crux of this whole case is that Walker brought a foreclosure in usual form of a mortgage on a piece of land over which he held another interest, to wit, the timber contract. He did not set up the timber interest for the reason that he, according to his testimony, thought he would get the land without it. Later on he found out that this plan would not mature in all probability. He then attempted to deed the timber rights which were included in the decree of foreclosure in a suit to which he was a party and had full knowledge of all the proceedings therein. At the sale of the property Warren attempted to give notice of his interest in the property. If this Court would permit persons to give such notice at a judicial sale, no property would ever be fairly sold in South Carolina under a decree of Court. At every sale some one would claim a fence, a house, the timber, or some other part of the land which would chill the bids and upset judicial sales entirely. When a man buys a piece of property at a judicial sale, he secures every interest in the property which is covered by the proceedings in the action. If the Court has jurisdiction and the parties in interest are properly served and made parties to the suit, the title carried at the sale by the decree of Court is a good and sufficient title to such interests as are determined in the suit. Of course, when the Master himself, under an order of the Court, makes an announcement at the sale, such announcement is binding upon the parties, but when an outsider makes an announcement, the successful bidder at the judicial sale buys whatever is legally sold under the pro-

ceedings. *Ex Parte Boyce*, 41 S. C., 201, 19 S. E., 495; *Stewart v. Groce*, 42 S. C., 500, 20 S. E., 411; *Beall Co. v. Weston*, 83 S. C., 491, 65 S. E., 823.

Walker claims that by the doctrine of equity he should have relief. He has lost nothing according to his own statement. He bought the timber for $2,000 and cut the poplar timber off of it which was worth about $2,000. He bought the Drew mortgage to protect the cutting of the timber, as the cutting impaired the security of the mortgage. He foreclosed the Drew mortgage and at that time swore that the property was worth $2,500. When he feared he was going to be mulcted in damages for chilling the bid he swore the property was worth $8,000, timber and all, and then later when he wanted to save the timber rights he attempted to show that the property was worth $15,000. He deeded a piece of timber to his brother-in-law for a consideration of $2,000, which he says was worth $8,-000, three days before the sale of the same under foreclosure. He intended to get possession of the entire property if possible. His action in the entire transaction shows no reason for this Court to grant him equitable relief, for "he who seeks equity must come into Court with clean hands and must himself do equity." If Walker's position is sustained, *J. L.* Oswald will lose a part of the purchase price which he paid at the Master's sale, for, according to testimony, the land is worth only about $5,500 without the timber.

The opinion of the Circuit Judge reaches a correct conclusion and gives a discussion of the facts and circumstances surrounding this transaction which is enlightening.

The above disposes of all the exceptions of the appellant, and the same are hereby overruled, and the judgment of the lower Court is affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CARTER concur.

MR. CHIEF JUSTICE WATTS did not participate.